S. G. WILDER *vs.* BARK ESKBANK, Etc.

IN ADMIRALTY. BEFORE HARRIS, C.J.

DECEMBER, 1878.

Salvors allowed one-third of the amount saved: it not being a case of derelict or extra-perilous service.

DECISION OF HARRIS, C.J.

By the libel and answer it appears that the bark Eskbank went ashore on the reef near Diamond Head, four miles to the eastward of Honolulu Harbor, on Sunday morning, November 3d; that at the request of Messrs. G. W. Macfarlane & Co., the libellant dispatched two steamers belonging to him—the Likelike, of the burthen of 600 tons or thereabouts, and the Mokolii, of the burden of 100 tons—to the assistance of the bark. Messrs. Macfarlane & Co., in their note asking this assistance, promise to pay $250 in case nothing should be saved, but in case the vessel and cargo, or any portion thereof, should be saved, then the libellant should have such salvage as should be allowed by this Court. It further appears by the libel and answer that the libellant proceeded to the wreck on the said 3d day of November (Sunday), and worked upon her with both the steamers, assisted by the Government tug-boat, to try and get the bark off, and finding it impossible, took off her crew and sent them ashore, and continued to work to save whatever could be saved until past midnight, and resumed work the next morn-

ing with the small steamer, the Mokolii, and continued to work until Friday, when the wind and sea very much increasing, he was unable to lie by the ship, and the bark broke up entirely the night between Saturday and Sunday, the 10th of November. On Sunday the 10th, he proceeded with both his steamers to pick up the cargo which was floating to seaward. The property thus saved being offered at public auction brought $16,828.34, and on this amount the libellant claims salvage.

The Mokolii was valued at $16,000, and had a crew of nine men all told; the Likelike is of large value, and had an insurance on her for $75,000, which, the insurance agents thought proper to notify the owner, might be vitiated in case that accident should occur to them whilst performing this salvage duty. Her crew was forty-five people all told. In addition to the crews of these vessels, the libellant employed fifty or sixty men during the Sunday, 3d of November, and the night succeeding, and for the rest of the time employed thirty-five men at wages of $3.00 per day and their food.

It is made to appear that the expenses of the libellant over and above the ordinary wages of the crews were $2,623.25, which should be repaid to the libellant, together with a reasonable remuneration for the use of his vessels, labor of his crews, the risk he ran, and his own enterprise in the matter.

No vessel could have done much of the service except a steam vessel, and the expense of running steam vessels here is much greater than in the Atlantic on account of the higher rate of wages, the expense of repairing machinery, and the price of fuel.

This is not a case of derelict, in which it is usual, though by no means invariable, to decree one-half in the way of compensation, nor was it a case of great peril, either to the wrecked crew or the wreckers, no human life was saved, nor was human life put at hazard in the preservation of the property, nor was the property at the time of the undertaking of the enterprise in an apparently hopeless condition, but for the interposition of the salvors; on the contrary, the weather was fine, the wreck was

on the leeside of the island, and was very near the port. In fact, there was nothing in it to make the work extra-perilous.

Under all the circumstances of the case, I think that a fair and proper remuneration would be one-third of the amount saved, and so decree.

Let judgment therefore be entered for the libellant in the sum of $5,609.44. Costs to be proportionately divided between both parties.

*E. Preston,* for libellant.
*J. M. Davidson,* for claimants.
Honolulu, 18th December, 1878.